MANAGEMENT SCIENCE
AMERICA, INC.

v.

Samuel R. PIERCE, Jr., Secretary of
the United States Department of
Housing & Urban Development.

Civ. No. C84–1959.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 27, 1984.

Charles E. Campbell, Hicks, Maloof &
Campbell, Atlanta, Ga., for plaintiff.

Nina L. Hunt, Asst. U.S. Atty., Atlanta,
Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the court on Defendant's motion to dismiss or in the alternative for summary judgment.

## FACTS

This action involves a contract between Plaintiff Management Science America ("MSA"), a developer and manufacturer of computer software, and the Department of Housing and Urban Development ("HUD"), an agency of the United States Government. Under the contract, MSA was to install, demonstrate and test a package of accounting systems software for HUD's IMB and Sperry computer systems. This dispute concerns the software programs, or "modules," for the Sperry system only.

The contract was executed September 30, 1982, and had an original completion date of October 1, 1983. MSA apparently did not deliver the modules by October 1. HUD did not terminate the contract, however, and in April 1984, agreed to amend the contract to set a new delivery date of July 31, 1984. At the time of amendment, HUD advised MSA that the agency would exercise its right to terminate the contract if MSA did not have a tested and operational system installed by the new July deadline.

MSA successfully installed three of the four modules in April and May of 1984. The facts surrounding MSA's attempts to install the fourth module and test the system at the end of July are in controversy. HUD contends that MSA failed to successfully install and demonstrate a working module despite MSA's efforts from July 29 to August 3, 1984. MSA maintains that it was prevented from making installation by HUD's failure to provide proper access to the computer and by the daily deletion of MSA's work by HUD employees.

It is undisputed, however, that the system was never successfully installed and tested on the HUD computer. On August 14, 1984, the HUD contracting officer, Mr. Kenneth Dosier, issued a final decision terminating for default that portion of the contract relating to the Sperry modules. Plaintiff contends that Mr. Dosier's decision was made arbitrarily and capriciously, in that he failed to review all pertinent facts and did not exercise his independent judgment in making the termination. After reviewing additional information supplied by MSA regarding the alleged installation difficulties, Mr. Dosier informed MSA on September 14, 1984 that he saw no reason to change his decision.

On September 26, 1984, MSA filed this action for injunctive relief against the Secretary of HUD, Mr. Samuel R. Pierce, Jr. MSA seeks an injunction barring Defendant and his agents from "proceeding with any action preventing the performance by Plaintiff of the Contract" and from awarding the contract to another company. Complaint, pp. 7–8. MSA also seeks an order enjoining Defendant from disseminating or disclosing any of MSA's trade secrets now in Defendant's control.

Although MSA initially asked for a temporary restraining order against Defendant, the parties subsequently agreed to maintain the status quo until further order of the court. Consent Order of October 1, 1984. Defendant then filed this motion to dismiss or in the alternative for summary judgment. A hearing was held on Defendant's motion to dismiss on October 11, 1984.

## JURISDICTION

Count One of Plaintiff's complaint alleges that this action arises under the Fifth Amendment to the United States Constitution and the laws of the United States, and that this court therefore has jurisdiction under 28 U.S.C. § 1331(a).[1] Plaintiff then alleges that it is entitled to judicial review of the agency's action under 5 U.S.C. § 702.[2]

---

1. That provision states:
   The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.
   28 U.S.C. § 1331(a).

2. Section 702 provides, in pertinent part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or

Defendant contests the Plaintiff's claim of subject matter jurisdiction, on the grounds that Plaintiff's claim is grounded in contract and is therefore within the exclusive jurisdiction of the United States Claims Court or the HUD Board of Contract Appeals under the Contract Disputes Act of 1978, 41 U.S.C. § 601, *et seq.* ("CDA"). Defendant argues that Plaintiff cannot circumvent that exclusive jurisdiction by attempting to sue under § 1331(a) and the Administrative Procedure Act ("APA"), § 702.

Plaintiff argues in response that Defendant has failed to comprehend the jurisdictional basis of its complaint. Plaintiff contends that the essence of its action is a claim that HUD officials violated federal procurement regulations in acting arbitrarily, capriciously and illegally in the performance of official functions, *i.e.*, terminating the contract.[3] Plaintiff denies that it is seeking either money damages or an order imposing a burden on the Government for performance of some specific function. Plaintiff maintains that it is instead seeking "an injunction against certain Government officials which will operate to permit MSA to complete performance of an act which it and its subcontractors are capable of performing which will serve to benefit the Government." Plaintiff Brief in Response, p. 5.

Plaintiff asserts that this court's acceptance of the Government's position would deprive MSA of a forum in which to obtain that injunctive relief, because the United States Claims Court is statutorily proscribed from awarding the relief Plaintiff seeks. Plaintiff then discusses at length the jurisdictional statutes governing the Claims Court and the federal district courts, and concludes that nothing in those statutes or the CDA bars the district court from providing this sort of relief.

■ With the enactment of the Contract Disputes Act of 1978, Congress provided a comprehensive statutory system of legal and administrative remedies to resolve all disputes arising from government contracts. The CDA provides for appeals to either the agency board of contract appeals[4] or to the United States Claims Court,[5] and specifically abolishes the jurisdiction of the federal district courts to hear claims "founded upon any express or implied contract with the United States" which is subject to the CDA.[6] The Senate report accompanying the CDA states the intent of Congress in no uncertain terms:

Section 10(a) is amended by allowing contractors with suits against the Government (excluding the Tennessee Valley Authority) to bring direct action only in the Court of Claims. U.S. district court jurisdiction is eliminated from Government contract claims.

S.Rep. No. 1118, 95th Cong.2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad. News 5235, 5244.

---

an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States or that the United States is an indispensable party.... Nothing herein ... (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

**3.** Plaintiff alleges violations of 41 C.F.R. § 24–1.312–2, 41 C.F.R. § 1–8.602–1, and 41 C.F.R. § 1–8.602–3(a). Plaintiff contends that contracting officer Dosier failed to review all pertinent facts in making its decision, illegally terminated the contract when MSA was not in default, and failed to give proper notice after HUD "waived" its default rights by allowing installation to continue into August.

**4.** 41 U.S.C. § 606.

**5.** *Id.* at § 609(a). The CDA originally provided for appeal to the Court of Claims, which was subsequently abolished by the Federal Courts Improvement Act of 1982. However, its trial functions and authority were essentially inherited by its successor, the U.S. Claims Court. *See* 28 U.S.C. §§ 1491–1508; FCIA, Pub.L. 97–164, 96 Stat. 25 (1982).

**6.** 28 U.S.C. § 1346(a)(2) as amended now states:

The district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States ... subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978.

Plaintiff acknowledges that § 1346 does not confer on the district court subject matter jurisdiction over contract actions seeking equitable relief. It also acknowledges that under the CDA all contract claims for damages must be brought before the U.S. Claims Court. Plaintiff instead seeks to avoid these jurisdictional barriers by arguing that its cause of action is statutory rather than contractual, thereby placing it outside Congress' clear mandate on contractual claims. As a claimant alleging arbitrary agency action in violation of statute, Plaintiff therefore argues that it is entitled to judicial review of its claims in this court under 5 U.S.C. § 702 and 28 U.S.C. § 1331.

This court's jurisdiction over those claims therefore turns on whether Plaintiff's action is essentially contractual or statutory in nature. The courts have repeatedly held that a government contractor cannot evade the jurisdiction of the Claims Court and its limited damages remedy by characterizing his claim as other than contractually based. *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 967 (D.C.Cir.1982).[7] The court in *Megapulse* suggested the following guidelines for making that determination:

> The classification of a particular action as one which is or is not "at its essence" a contract action depends both on the source of the right on which the plaintiff bases its claims, and upon the type of relief sought (or appropriate).

672 F.2d at 968.

■ The court finds that Plaintiff's action is essentially contractual. Although Plaintiff insists that it seeks merely an injunction to maintain the status quo, Plaintiff actually is seeking fifteen uninterrupted hours on the HUD computer to demonstrate its software. At the October 19 hearing, Plaintiff conceded this court could not grant it the relief it seeks without reinstating or declaring valid the contract which was terminated by HUD. The action is therefore not brought merely to restrain the wrongful actions of government officials, but to order the United States to perform the contract.

Plaintiff also argues that the source of its claims is not the contract dispute with HUD per se, but alleged violations of the federal procurement regulations. However, those violations are peripheral to the central grievance of Plaintiff's complaint, which is the wrongful termination of the contract for default. At the hearing, Plaintiff suggested three grounds on which this court could grant it relief: (1) waiver by Defendant; (2) absence of a breach by Plaintiff; (3) failure of the contracting officer to render an independent judgment. The first two theories are obviously contract defenses, while the third is insufficient to render Plaintiff's claims statutory in nature, rather than contractual.

If the mere allegation of procurement violations were to bring claims of this type within the jurisdiction of the district court, Congress' intent to limit contract remedies against the government to damages in the Claims Court would be effectively circumvented. As the former Fifth Circuit has stated:

> Since the United States by reason of its nature acts only through agents, it is hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA. Little imagination is needed to foresee the consequences of a holding that such claims as this may be reviewed either in a court having power to grant equitable relief against the United States or in one having none. We refuse to believe that Congress intended, in enacting the APA, so to destroy the Court of Claims by implication.

*Warner v. Cox,* 487 F.2d 1301, 1306 (5th Cir.1974). Plaintiff's claims are therefore inappropriate for review by this court.

---

7. *See also American Science & Engineering, Inc. v. Califano,* 571 F.2d 58, 61 (1st Cir.1978); *Alabama Rural Fire Ins. Co. v. Naylor,* 530 F.2d 1221, 1229 (5th Cir.1976); *International Engineering Co. v. Richardson,* 512 F.2d 573, 578 (D.C.Cir.1975), *cert. denied,* 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976); *Group Health Inc. v. Schweiker,* 549 F.Supp. 135, 139 (S.D.Fla. 1982); *S.J. Groves v. United States,* 495 F.Supp. 201, 206 (D.Colo.1980).

In support of its argument for jurisdiction, Plaintiff cites a number of cases involving government contractors and alleged procurement violations in which district courts found jurisdiction under § 702 of the APA and § 1331, and granted injunctive relief.[8] It is primarily on the basis of these cases that Plaintiff contends this court should review its claims. However, that line of precedent constitutes a special category of contract award cases, or "frustrated bidder" cases, which are clearly inapposite to Plaintiff's action.

In each of these frustrated bidder cases, the plaintiff is an unsuccessful bidder for a government contract. The plaintiff brings suit against the agency officials, alleging that they violated federal statute, usually in the form of procurement regulations, and thereby wrongfully awarded the contract to a competing bidder.

The distinguishing feature of the frustrated bidder, however, is that he has no contract upon which to sue the government. As a result, the frustrated bidder's cause of action is different from that of a government contractor like MSA in three major respects.

First, the frustrated bidder's dispute is not essentially contractual, but statutory. Since the frustrated bidder failed to secure the contract, his bid protest is not based on a contractual relationship with the government but on the procurement regulations and statutes. Judicial review of his claims is therefore appropriate in the district courts under the Administrative Procedure Act.[9] In contrast, MSA's claims are essentially contractual, and turn on MSA's performance or default under the contract rather than on the government's compliance with its bid award standards.

Second, the frustrated bidder cannot recover damages beyond his bid preparation costs because no contract exists upon which to calculate his lost profits. *Keco Industries Inc. v. United States*, 428 F.2d 1233, 192 Ct.Cl. 773 (1970). In a very real sense, then, such a plaintiff's remedy in the Claims Court is "inadequate" within the meaning of § 704 of the APA. Section 704 states, in pertinent part:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.

5 U.S.C. § 704. Review of the frustrated bidder's regulatory claims and the granting of injunctive relief by the district court is therefore appropriate.

In contrast, successful bidders can seek and be awarded full compensatory damages for government violations in the Claims Court based on the contract entered into with the agency. That damages remedy has consistently been held to be adequate, thereby barring judicial review under the APA. *See American Science & Engineering, Inc. v. Califano*, 571 F.2d 58 (1st Cir.1978). Thus, the special remedial concerns of the frustrated bidder do not exist for a contractor such as MSA. The successful bidder has an adequate, congressionally designated remedy of damages in the U.S. Claims Court.

Third, since the frustrated bidder has no contract to enforce, granting him injunctive relief does not constitute the specific performance of government contracts foreclosed under § 702 by Congress. The House Report on the bill amending § 702 states:

> The amendment to 5 U.S.C. § 702 is not intended to permit suit in circumstances where statutes forbid or limit the relief sought. Clause (2) of the third new sentence added to section 702 contains a second priviso concerned with sit-

---

8. *Acme of Precision Surgical Co. Inc. v. Weinberger*, 580 F.Supp. 490 (E.D.Pa.1984); *American District Telegraph v. Department of Energy*, 555 F.Supp. 1244 (D.D.C.1983); *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir. 1970); *Collins & Co. General Contractors v. Claytor*, 476 F.Supp. 407 (N.D.Ga.1979).

9. A frustrated bidder's action is also not within the Contracts Dispute Act. *Coastal Corporation v. U.S.*, 713 F.2d 728 (Fed.Cir.1983). District court jurisdiction is therefore not explicitly barred by 28 U.S.C. § 1346. *See supra* note 4 and accompanying text.

uations in which Congress has consented to suit and the remedy provided is intended to be the exclusive remedy. For example, in the Court of Claims Act, Congress created a damage remedy for contract claims with jurisdiction limited to ·the Court of Claims except in suits for less than $10,000. *The measure is intended to foreclose specific performance of government contracts.*

H.Rep. No. 1656, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad. News 6121, 6133 (emphasis added).

In contrast, injunctive relief for a government contractor like MSA would amount to an injunction directing the government to reinstate and perform the terminated contract. Such relief has been forbidden by Congress and cannot be granted by this court.

The frustrated bidder cases therefore constitute a special category of contract-related actions whose theoretical bases and remedial concerns are significantly different from Plaintiff's action. The grounds for exercising district court jurisdiction in that limited factual context do not extend to a suit by a government contractor terminated for default. The frustrated bidder cases therefore do not support MSA's claim for jurisdiction.

Plaintiff's argument on the Federal Courts Improvement Act ("FCIA"), Pub.L. No. 97–164, 96 Stat. 25 (1982), similarly overlooks the distinction between the frustrated bidder cases and suits by government contractors.

The FCIA amended 28 U.S.C. § 1491 to allow the Claims Court to grant equitable relief on any contract claim brought before the contract is awarded.[10] Plaintiff argues

that Congress' limitation of the Claims Court equitable powers to pre-award cases leaves the district courts free to grant injunctive relief in post-award cases. In support of its argument, Plaintiff points to the FCIA's legislative history, in which Congress specifically states that in granting this additional jurisdiction to the Claims Court it did not intend to disturb the existing jurisdiction of the district courts.[11]

However, the jurisdiction of the district courts which Congress explicitly avoided disturbing in the FCIA extends only to frustrated bidder cases under *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970). The legislative history of the FCIA in the Senate states:

> By conferring jurisdiction upon the Claims Court to award injunctive relief in the pre-award stage of the procurement process, the Committee does not intend to alter the current state of the substantive law in this area. Specifically, the *Scanwell* doctrine as enunciated by the D.C. Circuit Court of Appeals in 1970 is left intact.[12]

Similarly, the House Report states:

> It is not the intent of the Committee to change existing law as to the ability of parties to proceed in the District Court pursuant to the provisions of the Administrative Procedure Act in instances of illegal agency action. See, e.g., *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970).[13]

The jurisdiction which Plaintiff would invoke is thus limited to that exercised in the *Scanwell* line of cases.

*Scanwell* was the first frustrated bidder case allowed in the district courts. The

---

**10.** Section 1491(a)(3) now reads:
> (3) to afford complete relief on any contract claim brought before the contract is awarded, the [claims] court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including, but not limited to, injunctive relief....

Prior to this amendment, the Claims Court did not have injunctive or declaratory powers, but could only award money damages. *Heli-Jet Corp. v. United States,* 2 Cl.Ct. 613, 619 (1983).

**11.** *See* H.R.Rep. 312, 97th Cong. 1st Sess. at 43 (1981).

**12.** S.Rep. No. 97–275, 97th Cong. 1st Sess., pp. 22–23 (1981), *reprinted in* 1982 U.S.Code Cong. & Ad.News, 11, 33.

**13.** H.Rep. No. 312, 97th Cong. 1st Sess. at 43 (1981).

plaintiff brought suit against the Administrator of the Federal Aviation Administration, alleging that the FAA had illegally awarded a contract to a competing bidder. Previously, the courts had held that such a plaintiff had no litigable rights, following the leading case of *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940).[14] In *Scanwell*, however, the Court of Appeals for the D.C. Circuit noted the recent broadening of the concept of standing under the APA and *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and held that "one who has a prospective beneficial relationship [with the government] has standing to challenge the illegal grant of a contract to another" under the APA. 424 F.2d at 870.

The *Scanwell* right of action therefore only extends to bid award contests. In affirming *Scanwell* in the FCIA, Congress merely affirmed that district courts could continue to grant equitable relief to frustrated bidders who challenge the contract award process. The FCIA did not empower the district courts to grant relief to successful contractors whose grievances arise from their contract with the government rather than from the award process itself.

The only cases cited by Plaintiff that do not fall squarely within the frustrated bidder category are *Sheehan v. Army & Air Force Exchange Service*, 619 F.2d 1132 (5th Cir.1980), *reh. denied*, 627 F.2d 239, *rev'd* 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982), *on remand* 686 F.2d 262 (1982), and *Vibra-Tech Engineers, Inc. v. United States*, 567 F.Supp. 484 (D.Colo. 1983).

In *Sheehan*, the district court dismissed the action of a fired employee of the Army & Air Force Exchange Service (AAFES), who had brought suit against the government for wrongful discharge. The Court of Appeals reversed, finding that the district court had jurisdiction to award damages under 28 U.S.C. § 1346 and equitable relief under 28 U.S.C. § 1331 and 5 U.S.C. § 702. MSA contends that its action is similarly within the court's jurisdiction under § 1331 and § 702.

However, *Sheehan* is readily distinguishable from the action at bar. Sheehan did not challenge a procurement decision made by a contracting officer, but an employment decision made by his superior. 619 F.2d at 1136. His cause of action was therefore not subject to the Contract Disputes Act, and district court jurisdiction over his suit was not precluded by 28 U.S.C. § 1346.[15]

Furthermore, *Sheehan* was not essentially a contract dispute. Although the court found an implied contract between *Sheehan* and AAFES on the basis of the employment regulations, the Supreme Court reversed that part of the holding on appeal. In *AAFES v. Sheehan*, 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982), the Court held that the Fifth Circuit erred in implying a contract from the AAFES regulations. *Sheehan*'s cause of action was thus primarily statutory, and therefore suitable for review by the district court rather than by the Claims Court. District court review in *Sheehan* thus did not "undermine the exclusive jurisdiction of the Court of Claims." 619 F.2d at 1140, n. 14.

MSA's claims, however, do involve a procurement decision made by a contracting officer. Its cause of action is subject to the CDA, and must be brought in the Claims Court rather than in the district court. District court review of MSA's contractual claims would indeed infringe on the Claims Court's exclusive jurisdiction over government contract disputes.

In *Vibra-Tech Engineers, Inc. v. United States*, the plaintiff Vibra-Tech submitted a bid on a proposed geological survey. The

---

14. For a discussion of the pre-*Scanwell* law, *see Hayes International Corporation v. McLucas*, 509 F.2d 247, 254, n. 10 and accompanying text (5th Cir.1975), *cert. denied*, 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1976).

15. *See supra* note 4 and accompanying text.

technical evaluation committee recommended awarding the contract to another bidder, but the contracting officer rejected the recommendation and awarded Vibra-Tech the contract. Three months later, the contract awarded to Vibra-Tech was suddenly "terminated for convenience" and awarded to the plaintiff's competitor. The plaintiff sued, claiming that the termination was arbitrary and capricious in violation of the regulations.

The District Court of Colorado held that the plaintiff's action for injunctive relief was not barred by the Contract Disputes Act, and ordered the government to reinstate the contract with Vibra-Tech. 567 F.Supp. at 487. On the basis of that decision, Plaintiff MSA argues that this court has power to grant it injunctive relief for the arbitrary termination of its contract.

At first glance, Vibra-Tech and the case at bar appear to be akin factually, since both cases concern an alleged termination of a government contract. The reasoning of the court, however, reveals that the court considered the plaintiff to be in the position of a frustrated bidder. The plaintiff's action turned on whether the government had used the proper criteria in awarding the contract between the two final proposals. Although Vibra-Tech had been chosen as the successful bidder and subsequently terminated, the court treated it as a frustrated bidder challenging a contract award to a competitor.

This perspective is reinforced in the court's citation of cases. The court stated that "even after enactment of the Contract Disputes Act, courts determining federal contract disputes have continued to award

equitable relief." 567 F.Supp. at 487. However, the cases cited as examples of such an award are frustrated bidder cases,[16] not cases involving disputes over contract performance and breach. Vibra-Tech therefore is properly characterized as a frustrated bidder case, where the plaintiff challenges the improper award of a contract.[17]

Thus, neither Sheehan nor Vibra-Tech support Plaintiff's claim of subject matter jurisdiction in this court. Plaintiff's argument that it will be unable to obtain the relief it seeks if restricted to the U.S. Claims Court is correct, but unavailing. Congress has decided to bestow jurisdiction over all contract claims against the government on the Claims Court, in order to secure its expertise and avoid the fragmentation of the contracting process. In doing so, it limited the remedies available to the contractor to damages, and excluded equitable relief. The damage remedy has repeatedly been held by the courts to be adequate.[18]

The court therefore concludes that it lacks subject matter jurisdiction over Plaintiff's claim in Count One, and will grant Defendant's motion to dismiss.

## TRADE SECRETS

■ Count Two of Plaintiff's complaint seeks an injunction to restrain Defendant from disseminating or disclosing MSA's software in violation of 18 U.S.C. § 1905, the Trade Secrets Act. Plaintiff alleges that it is unable to verify whether the software is being protected in accordance with the contract or whether the systems

---

**16.** Aero Corp. v. Department of the Navy, 540 F.Supp. 180 (D.D.C.1982) (disappointed contractor challenges award of contract to another supplier without competitive negotiation); Collins & Co., General Contractors v. Claytor, 476 F.Supp. 407 (N.D.Ga.1979) (low bidder seeks injunction against contract award to next highest bidder); Gould v. Chafee, 450 F.2d 667 (D.C. Cir.1971) (bidders challenge award of contracts to low bidder as arbitrary).

**17.** To the extent that Vibra-Tech holds that any contract dispute may be brought in district court on the grounds of arbitrary agency action,

the court ignores its own recent precedent. In S.J. Groves v. United States, 495 F.Supp. 201 (D.Colo.1980), the District Court of Colorado discussed in detail the jurisdiction of the district courts and the Claims Court over contract disputes. The Groves court concluded that where a claim is essentially grounded in contract and review is available in the Claims Court, the determination of the claim rests exclusively with the Claims Court. 495 F.Supp. at 207.

**18.** See supra at p. 227.

are subject to be disclosed to unauthorized HUD personnel or third parties.

Defendant argues that the motion for injunction should be denied on the grounds that no affirmative agency decision to disclose has been made, and therefore no "final agency action" has been taken which may be judicially reviewed under 5 U.S.C. § 702. Furthermore, Defendant has stated by affidavit that all MSA materials relevant to the Sperry portion of the contract are in storage with access limited to the contracting officer. Defendant therefore contends that Plaintiff has not been aggrieved by any agency action.

Regardless of whether the lack of final agency action is relevant to Plaintiff's request for an injunction to avoid disclosure of the MSA software, the court finds that the record fails to suggest a basis for a viable concern on MSA's part that such disclosure is about to occur. This failure, coupled with Defendant's statement by affidavit that the software has been secured, entitles Defendant to summary judgment on Count Two.

While HUD has not explained its reasons for retaining the software, the agency has apparently secured the information for the duration of this suit and, presumably, for the duration of a suit by Plaintiff in the Court of Claims. If the parties are not able to reach a settlement as to return of the software and the government seeks or proposes to use or release the information, Plaintiff would clearly have a cause of action in this court under 5 U.S.C. § 702 and 18 U.S.C. § 1905. *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). The instant order is without prejudice as to any such future claims.

SUMMARY

The court hereby GRANTS Defendant's motion to dismiss Count One of the complaint for lack of subject matter jurisdiction. The Court DISMISSES Count Two without prejudice. Defendant's motion for transfer of venue is hereby MOOTED with dismissal of both counts of Plaintiff's complaint.