**MANSHUL CONSTRUCTION CORP., Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Misc. No. 88–183.

United States District Court, E.D. New York.

May 18, 1988.

Melvin J. Kalish, New York City, for petitioner.

Varuni Nelson, Asst. U.S. Atty., Andrew J. Maloney, U.S. Atty., Brooklyn, for respondent.

## MEMORANDUM OPINION

DEARIE, District Judge.

The King, it was held at English common law, could do no wrong. When "a long train of abuses and usurpations" by George III proved otherwise, events were set in motion that culminated in the formation of a government that, by the terms of its constitutive document, *could* do wrong if it exceeded its limited powers. That the rights of individuals against the government can meaningfully be vindicated *at all* in courts that are organs of that government is one of the miracles of American constitutional democracy.

The Framers' thaumaturgy, however, was less than complete: the hoary tradition endures that redress against the government can be had only by its consent, in the forum of its choice, and for only such relief to which it acquiesces. The immunity thus granted to the sovereign, whatever its virtues, has undeniably produced an uneven topography of standing and jurisdiction that leaves some litigants on terra firma while others languish in the twilight zone.

The petitioner presently before the Court, which may well have a valid contract claim against the government, is among those who, despite the possible merit of their complaints, find themselves deprived of any real-world court that is empowered to grant relief to them.

### FACTS

Petitioner, Manshul Construction Corporation, alleges that it bid on a contract to construct barracks for the Navy in Stapleton, Staten Island, New York. Although Manshul was the low bidder, the Navy rejected its bid and announced that the contract would be negotiated. After protracted negotiations, Manshul won the contract.

The petition further alleges that, as the groundbreaking date approached, the Navy informed Manshul that stringent contractor quality control procedures would have to be implemented at Manshul's expense. Manshul, which in its negotiated price had allotted only $30,000 for quality control—allegedly because the Navy had apparently agreed that others would be responsible for much of that work—found itself facing a job some twenty times more expensive. After protests to the Navy proved fruitless, Manshul filed an action for rescission in the United States Claims Court.

As that suit winds its way through heavy judicial traffic, out-of-court events threaten to overtake it. Manshul, which has refused to perform any portion of the contract except under protest, Petition Exs. G–R, now faces imminent risk of being declared in default under the contract. Manshul alleges that it presently has but two, equally unpalatable, choices: either (1) to fail to perform and risk huge financial penalties if the Claims Court does not rescind the contract or (2) to perform and risk being estopped from obtaining rescission in the Claims Court. Manshul petitioned this Court for a temporary injunction that would preclude the Navy from requiring performance or declaring a default until Manshul's rescission claim is finally adjudicated. For the reasons stated below, Manshul's application for a preliminary injunction was denied, and the petition was dismissed, by an Order of this Court dated May 13, 1988.

### DISCUSSION

Manshul's contract with the Navy is subject to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613. Petitioner's Brief at 5; Respondent's Brief at 2. That act provides that in a contract dispute with a federal agency other than the Tennessee Valley Authority, "a contractor may bring an action directly on the claim in the United States Claims Court...." 41 U.S.C. § 609(a)(1); *see* 28 U.S.C. § 1491(a). Indeed, Manshul has done so. But the Claims Court apparently lacks the power to grant the injunction that petitioner seeks here. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1374 (Fed.Cir.1983) (equitable power of Claims Court limited by 28 U.S.C. § 1491(a)(3) to granting injunctions *before* contract award); *see also, e.g., Brown v. United States*, 3 Cl.Ct. 31 (1983), *aff'd*, 741 F.2d 1374 (Fed.Cir.1984); *La Strada Inn, Inc. v. United States*, 12 Cl.Ct. 110 (1987) (same re: implied contract); Wasko Aff. in Support of Petition ¶ 4 (Senior Deputy Clerk of Claims Court told Manshul's attorney that application for injunctive relief "would probably be dismissed for lack of jurisdiction"). Therefore, the instant petition was brought before this Court, whose power to grant equitable relief is not similarly limited. Petitioner's Brief at 1.

█ The general power to grant injunctions, however, does not carry with it the authority to hear any suit in which a petitioner feels injunctive relief is required. The Court's equitable powers may be exercised only in cases that are within its statutorily-defined jurisdiction, and this case lies outside it. Accordingly, petitioner's application for a preliminary injunction must be denied, and the petition must be dismissed.[1]

Prior to enactment of the Contract Disputes Act, the Tucker Act, 28 U.S.C.

---

1. The Court also doubts that Manshul has made the showing of irreparable injury that is of course required for issuance of a preliminary injunction, *see Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir.1988), but does not

**62**

§ 1346(a)(2), would have vested this Court with jurisdiction over Manshul's claim, concurrent with the Claims Court. As amended by the Contract Disputes Act, however, § 1346(a) now reads, in pertinent part:

The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of ... (2) Any ... claim against the United States, not exceeding $10,000 in amount, founded ... upon any express or implied contract with the United States, ... except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States ... which are [sic] subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978 [41 U.S.C. §§ 607(g)(1), 609(a)(1) ].

Manshul concedes that its "underlying" claim for rescission is therefore committed to the exclusive jurisdiction of the Claims Court, Petitioner's Brief at 4–5, but contends that its petition to this Court is not "founded upon any express or implied contract with the United States." Rather, Manshul argues that the instant action is founded upon its statutory and common law right to bring its contract action in the Claims Court, unimpaired by the Navy's out-of-court efforts to compel performance. This creative recharacterization cannot permit petitioner to elude the jurisdictional strictures of the Contract Disputes Act.

■ A government contractor may, of course, seek relief in the District Court for a claim that bears some relation to a contract if the essential nature of the claim is not contractual. *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C.Cir.1982). *Megapulse*, however, is quite distinct from the case at bar. The plaintiff in *Megapulse* sought to protect proprietary information under the Trade Secrets Act, 18 U.S.C. § 1905. In *Megapulse*, the plaintiff went "to great lengths to demonstrate that it is not relying on the [disclosure protections in its government] contract at all.... but on an alleged governmental infringement of property rights and violation of the Trade Secrets Act." *Id.* at 969.

■ By contrast, the rights Manshul seeks to vindicate have no ultimate basis other than the contract between Manshul and the Navy. The "right" to seek rescission of a contract may be protected by statute and federal common law, but that right is meaningless in the absence of a contract. The Court finds it impossible to draw a jurisdictional line between a case arising out of a contract, on the one hand, and a case arising out of a right to enforce a right arising out of a contract, on the other. Indeed, petitioner, despite strenuous efforts to avoid doing so, occasionally lapses into language that reveals the fundamentally contractual origins of the relief sought here:

Petitioner's application to this Court is not based upon the contract.... Rather, the application is for a preliminary injunction which would, in essence, stay performance of the contract and prevent a termination based upon default pending the outcome of the Claims Court action.... The dispute is with the Navy's actions [that] imping[e] upon the federally protected right to pursue the action in Claims Court. It is only incidental that the means by which the Navy is interfering with Petitioner's rights is by demanding performance of the contract.

Petitioner's Reply Brief at 6–7. The Court cannot agree that the contractual roots of this controversy are "incidental"; rather, as the second quoted sentence makes clear, the relief sought by petitioner is entirely and inherently contractual. Were it not for the limits on the Claims Court's equitable powers, the requested injunction would normally be sought in the court hearing the rescission claim, as a preserver of the status quo pending litigation. The fact that plaintiff may be unable to gain such relief in the Claims Court does not grant this Court jurisdiction to hear, as an independent action, a claim for relief that is part and parcel of a contractual dispute with the government. *American Science & Engineering, Inc. v. Califano*, 571 F.2d 58, 62 (1st Cir.1978); *Serra v. U.S. General Services Admin.*, 667 F.Supp. 1042, 1051 (S.D.

reach this issue in light of the dismissal on jurisdictional grounds.

N.Y.1987); *Consumers Electric Power Corp. v. U.S. Postal Service,* 530 F.Supp. 702, 706–07 (C.D.Cal.1982). Nor can jurisdiction lie simply because petitioner alleges violations of statutory or common law rights, in the face of this Court's determination that the petition is "founded upon [a] contract" within the meaning of 28 U.S.C. § 1346(a)(2). *Ingersoll–Rand Co. v. United States,* 780 F.2d 74, 76–79 (D.C.Cir. 1985); *American Science & Engineering, supra,* 571 F.2d at 62–63; *Management Science Am., Inc. v. Pierce,* 598 F.Supp. 223, 225–26 (N.D.Ga.1984).

Petitioner cites a number of cases that purportedly assert that district courts have jurisdiction to grant equitable relief when the Claims Court cannot. Many of these cases, *e.g. Parkview Corp. v. Department of Army,* 490 F.Supp. 1278 (E.D.Wis.1980), involve interpretations of the Tucker Act but not claims covered by the Contract Disputes Act, and are therefore inapposite. Others are the so-called "frustrated bidder" cases, which are distinguished precisely because a *frustrated* bidder does *not* have a government contract out of which the suit arises. *E.g., B.K. Instrument Inc. v. United States,* 715 F.2d 713, 728 (2d Cir.1983); *see Management Science, supra,* 598 F.Supp. at 227–228 (excellent discussion of distinction between frustrated bidders and unhappy contractors). The case upon which petitioner principally relies, *Vibra–Tech Engineers, Inc. v. United States,* 567 F.Supp. 484 (D.Colo.1983), also fails to support petitioner's position. Vibra–Tech had been awarded a contract, which was then arbitrarily terminated. Vibra–Tech sued in district court for an injunction terminating the competitor's contract and reinstating its own. The court held that the remedy of an injunction was available to plaintiff, notwithstanding the Contract Disputes Act. Subject matter jurisdiction, which apparently was uncontested,[2] is not explicitly discussed in the opinion; the somewhat mysterious source of that jurisdiction, in light of the Contract Disputes Act, must be that the court viewed *Vibra–Tech,* post-termination, as a frustrated bidder rather than a holder of contractual rights. The court's citation of frustrated bidder cases in support of its holding on the remedy, *id.* at 487, supports this conclusion. *See Management Science, supra,* 598 F.Supp. at 230 (distinguishing *Vibra–Tech*).

Manshul has thus produced no apposite authority in support of this Court's jurisdiction to hear the instant petition. The Court recognizes that its limited jurisdiction combined with the Claims Court's limited equitable power trap petitioner in a Catch–22, but the Court must comply with the statutory scheme. *See Management Science, supra,* 598 F.Supp. at 225 (Congress intended to prevent district courts from hearing contract claims); *Serra, supra,* 667 F.Supp. at 1051 (Contract Disputes Act evidenced congressional conclusion that limited relief available from Claims Court would suffice for contractors). Manshul argues that, unless this Court hears its application for an injunction, it will be left with a right to seek contract rescission but with no remedy adequate to protect that right.[3] This argument may have some merit, but Manshul is entitled only to those remedies explicitly permitted by Congress in its limited waiver of sovereign immunity. *See United States v. Mitchell,* 445 U.S. 535, 538–40, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980).

## CONCLUSION

The Clerk of the Court is directed to enter judgment in accordance with this Court's May 13, 1988 order.

---

**2.** The government stipulated to a preliminary injunction in *Vibra–Tech,* 567 F.Supp. at 485, a step that would be unimaginable where, as here, the government challenged the Court's jurisdiction to hear the case.

**3.** The Court, given its jurisdictional holding, has not examined the correctness of Manshul's assumption that performance under the present circumstances would severely prejudice the pending rescission action. Perhaps, in light of the apparent unavailability of a forum in which to obtain the injunction Manshul seeks, the Claims Court might relax any rule of estoppel that would ordinarily apply to Manshul.