**In the Matter of AMERICAN SHIP BUILDING COMPANY, INC., Debtor.**

**Bankruptcy No. 93–11552–8B1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 22, 1994.

Harley E. Riedel, Tampa, FL, for debtor.

Michael S. Davis, New York City, for Nat. Union Fire Ins. Co.

Robin Trupp, Leonard Gilbert, Tampa, FL, for Tampa Port Authority.

Foley and Lardner, Tampa, FL, for First Bank of Milwaukee (Midland).

Charles D. Stodghill, Washington, DC, for U.S.

## ORDERS ON DEBTOR'S AND DEPARTMENT OF NAVY'S MOTIONS FOR SUMMARY JUDGMENT REGARDING DEBTOR'S ASSUMPTION OF GOVERNMENT CONTRACTS

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for hearing upon the Debtor's motion to assume its executory contracts with the Department of Navy (Navy). Both the Navy and the Debtor filed cross-motions for summary judgment. The Court, upon considering the motions, affidavits, depositions and memorandum as well as the record in this case, and considering the law regarding motions for summary judgment, finds that as to the issues set forth herein there are no issues of material fact. See, Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Further, pursuant to this Court's decision in In re Celotex Corp., 152 B.R. 667 (Bankr.M.D.Fla.1993), the Court finds that it has jurisdiction, and the matters herein under consideration are core.

While it may be argued there is an overwhelming amount of facts associated with this government contract dispute between the parties, actually the facts and, more specifically, the law are basic and easily decided.

The Debtor operates a shipyard in Tampa, Florida. It entered into contracts with the United States Navy to build certain vessels referred to as the TAOS contract and the TAGOS contract. Prior to the Debtor filing bankruptcy, the Department of Navy terminated the TAOS contract. Debtor received various notices to cure delinquencies as to the TAGOS contract but the parties agree there has not been a termination of the latter contract.

As to the TAOS contract, Debtor seeks to have this Court determine the Navy's termination of the government contract was improper and therefore the government contract is capable of being assumed under Section 365.

As to the TAGOS contract, which has not been terminated and which the Debtor seeks to assume, the government takes the position the Debtor cannot assume the government contract because of the limitations placed on such assumption under Section 365(c)(1) of the Bankruptcy Code and the anti-assignment provisions concerning government contracts found in the Federal Statutes, Title 41 U.S.C. § 15.

### TAOS CONTRACT

There is no dispute the Navy terminated the contract with the Debtor as regards this ship (TAOS). Debtor contends the termination is improper and illegal and this Court should annul the termination and allow the Debtor to assume the TAOS contract upon Debtor proving it can meet the other requirements of Section 365 of the Bankruptcy Code. The government contends the Court is without jurisdiction because the Debtor's remedies after a termination of the government contract is controlled by the Contract Disputes Act, Title 41 U.S.C. § 601 et seq. According to the Navy, a contract such as the Debtor's which has been terminated by

the government for whatever reason has only two remedies: appeal to the appropriate Board of Contract Appeals, Title 41 U.S.C. § 605 and § 606, or to the United States Court of Federal Claims, Title 41 U.S.C. § 609. *See generally, Lauren Springer, A Review of Recent Decisions by the United States Court of Appeals for the Federal Circuit: Comment: Choice of Forum From a Contractor's Perspective,* 37 Am.U.L.Rev. 1237 (1988).

■ While this executory contract of the Debtor is property of the estate and the Bankruptcy Court has jurisdiction to determine the assumability of a contract under Section 365, to be assumable an executory contract cannot have been terminated prepetition.

■ Debtor, by its motion to assume the contract with the United States Navy, places at issue the validity of the Navy's termination of the TAOS contract and thereby this Court's jurisdiction to decide the correctness of that termination. This jurisdictional question is not new but nonetheless requires articulation. In an opinion under the Bankruptcy Act, Circuit Judge Goldberg commented on the jurisdictional conflict between government contract disputes and bankruptcy.

> We have been presented with two inclusive, exclusive, sweeping schemes, both of which the Supreme Court has endorsed. The disputes clause is something that *no court* can disregard. Bankruptcy courts have jurisdiction exclusive of *all other courts*. Given such conflicting mandates, what is a poor circuit judge to do?

*Gary Aircraft Corp. v. United States (In re Gary Aircraft Corp.),* 698 F.2d 775, 780 (5th Cir.1983). The Fifth Circuit, in *Gary Aircraft Corp.,* ruled the bankruptcy court should stay any action regarding the government contract dispute pending conclusions of the proceedings before the Board of Contract Appeals.

> We would not dream of giving the Board of Contract Appeals the broad equitable jurisdiction given to the bankruptcy court, merely because the bankrupt was a party to a government contract. By similar log-

ic, we see no reason to give to the bankruptcy court the determination of the existence of a claim and its valuation when that is within the peculiar expertise of the Board of Contract Appeals. This may be especially true when the sole significant asset of the debtor is a claim against the government, which *must* pass through the Board of Contract Appeals and Court of Claims. We need a narrow turf and a legal tightrope walker to determine the validity and magnitude of the contract claims, if any. Assuming there be such, we may then return to bankruptcy turf to see if reorganization is to be found in the grass.

*Supra* at p. 785.

Other courts, for the most part have taken a similar position as the Fifth Circuit's inquiry that the bankruptcy court should stand aside and allow the appropriate Board of Contract Appeals to resolve the dispute. The bankruptcy courts, considering the Bankruptcy Code and their jurisdiction, have held, in the main, that the Contract Disputes Act provides for jurisdiction in the Board of Contract Appeals or the Federal Court of Claims. *Misener Indus., Inc. v. United States (In re Misener Indus., Inc.),* 54 B.R. 89 (Bankr.M.D.Fla.1985); *In re T.D.M.A., Inc.,* 66 B.R. 992, 995–996 (Bankr.E.D.Pa. 1986); *In re Invader Corp.,* 71 B.R. 564 (Bankr.W.D.Tex.1987); *TS Infosystems, Inc. v. National Oceanic and Atmospheric Admin. (In re TS Infosystems, Inc.),* 1990 WL 98475, 1990 Bank. Lexis 1432 (Bankr.Md. 1990). Two other bankruptcy courts found the matters before them did not relate to the Contract Disputes Act. *Inslaw, Inc. v. United States (In re Inslaw, Inc.),* 76 B.R. 224, 239 (Bankr.D.C.1987)—violations of the automatic stay; *All Chemical Isotope Enrichment, Inc. v. Newton (In re All Commercial Isotope Enrichment, Inc.),* 127 B.R. 829 (Bankr.E.D.Tenn.1991)—determination of property of the estate.

As an obverse concern, one might argue that if the district court has jurisdiction over similar government contract disputes, then the bankruptcy court, having had bankruptcy cases referred to it by the district court, could have similar jurisdiction relative to the

Contract Disputes Act. Debtor's only authority for this proposition that the district court's (and thus the bankruptcy court's) jurisdiction should prevail over the jurisdiction set forth in the Contract Disputes Act is found in *Vibra–Tech Eng'rs, Inc. v. United States*, 567 F.Supp. 484 (D.Colo.1983). This opinion has been roundly rejected. The *Vibra–Tech* court failed to follow its own precedent. *Management Science America, Inc. v. Pierce*, 598 F.Supp. 223, 229 (N.D.Ga.1984); *see, S.J. Groves & Sons Co. v. United States*, 495 F.Supp. 201 (D.Colo.1980). A subsequent opinion of the same district court does not acknowledge the *Vibra–Tech* opinion. *Sealtite Corp. v. General Services Admin.*, 614 F.Supp. 352 (D.Colo.1985). Other courts have suggested the government stipulated to the initial injunction in *Vibra–Tech*, therefore acknowledging the jurisdiction in the district court, *Manshul Constr. Corp. v. United States*, 687 F.Supp. 60, 63 (E.D.N.Y.1988). Other courts distinguish *Vibra–Tech* completely, *J.C. Prods., Inc. v. United States*, 608 F.Supp. 92 (W.D.Mich.1984). Two circuit courts were simply not impressed by the holding in *Vibra–Tech*. *See, Ingersoll–Rand Co. v. United States*, 780 F.2d 74 (D.C.1985), *Eagle–Picher Indus., Inc. v. United States*, 901 F.2d 1530 (10th Cir.1990).

Similarly, circuit courts considering this jurisdictional conundrum have, except for one, held jurisdiction rests with the Board of Contract Appeals or the Federal Claims Court.[1] *Gary Aircraft Corp., supra; Ingersoll–Rand Co. v. United States, supra; Eagle–Picher Indus., Inc. v. United States, supra; United States v. MacLeod Co., Inc. (In re MacLeod Co., Inc.)*, 1991 WL 96721, 1991 U.S.App. Lexis 12510 (6th Cir.1991) unpublished; *Mark Dunning Indus., Inc. v. Cheney*, 934 F.2d 266 (11th Cir.1991); *see also, Choctaw Mfg., Inc. v. United States*, 761 F.2d 609, 621, note 19 (11th Cir.1985); *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 727–728 (2d Cir.1983); *SeaLand Service, Inc. v. Brown*, 600 F.2d 429 (3d Cir.1979);·

*United States v. Digital Prods. Corp.*, 624 F.2d 690, 692 (5th Cir.1980).

The Sixth Circuit, in its unpublished opinion in *MacLeod*, adopts the position of the debtor in weighing the jurisdictional exclusivity of the bankruptcy court against the Contract Disputes Act. There, the bankruptcy court's jurisdiction was determined to be exclusive as mandated by Congress and 28 U.S.C. 1334(d) and therefore predominated over the Contract Disputes Act. *MacLeod* can be distinguished on two bases. First, the United States had brought an action against *MacLeod* in the bankruptcy court and *MacLeod* had counterclaimed against the United States. Clearly, this was another situation where the United States Government sought the jurisdiction of the bankruptcy court by filing an action there. Such similar relinquishment of either the sovereign immunity of the United States or the waiver of the jurisdiction under the Contract Disputes Act or other laws arises where the government brings its claim or dispute to the bankruptcy court. The government has not filed a proof of claim in this case. *See, United States v. Carolina Parachute Corp.*, 907 F.2d 1469 (4th Cir.1990), where the government did not object to the plan's treatment of its claims.

Secondly, it distinguished the Fifth Circuit's opinion in *MCorp Fin., Inc. v. Board of Governors Fed. Reserve Sys. of the United States*, 900 F.2d 852 (5th Cir.1990), where, *inter alia*, the Fifth Circuit Court of Appeals reversed the lower court which had enjoined the Board of Governors of the Federal Reserve Bank from pursuing its enforcement rights against the Chapter 11 debtor. There, the Fifth Circuit held "the legislative history reflects no intent that the bankruptcy court's jurisdiction supersede the exclusive jurisdiction of an administrative agency ..." at p. 855. It is to be noted the Supreme Court of the United States affirmed this part of the Fifth Circuit decision in *MCorp Board of Governors of the Fed. Reserve Sys. v. MCorp Fin. Inc.*, —— U.S. ——, ——, 112 S.Ct. 459,

1. It should be noted that jurisdiction may lie in the district court where the real dispute is not on contract termination but with unsuccessful bidders claims to a government contract, *see Choctaw Mfg. Co., Inc. v. United States*, 761 F.2d 609 (11th Cir.1985); *B.K. Instrument, Inc. v. United States*, 715 F.2d 713 (2nd Cir.1983). The Debtor's dispute with the Navy is not an unsuccessful bidder case.

465, 116 L.Ed.2d 358 (1991). It is quite clear the dispute of the Debtor with the Navy even adopting the *MacLeod* philosophy looks more like the *MCorp* scenario than the *MacLeod* one. Further, it is quite clear from *MCorp* that while bankruptcy jurisdiction may be exclusive, there are times where other forums' jurisdiction, because of the uniqueness of issue and adjudication process, are concurrent and should prevail. This conclusion is reinforced by our Circuit Court's opinion in *Mark Dunning Indus., supra.* There, the Court considered much of the authority reviewed herein and found the district court had no subject matter jurisdiction over contract dispute actions against the federal government. *Supra* at 269; *cf., Region 8 Forest Serv. Timber Purchasers v. Alcock,* 993 F.2d 800, 807 (11th Cir.1993). Therefore, it is the finding of this Court that in matters dealing with contract disputes under Title 41 U.S.C. this Court should yield to the jurisdiction of the Board of Contract Appeals unless the government seeks the bankruptcy court's jurisdiction or waives any right to object to this Court's jurisdiction.

## TAGOS CONTRACT

■ It is undisputed that the TAGOS contract has not been terminated by the government. All things being equal under Section 365, assuming they ever are, Debtor has the right to assume the contract.

The gravamen of the Navy's motion for summary judgment regarding the Debtor's ability to assume the contract is related to the limitation set forth in Section 365(c)(1)(A).[2] This Code provision limits the trustee or the debtor-in-possession's ability to assume or assign the executory contract if "applicable law" would excuse the Navy from accepting the performance of a party, other than the debtor-in-possession, on the contract without the consent of the Navy. According to the Navy, the juxtaposition of Section 365(c)(1)(A) and the Non–Assignment Act, 41 U.S.C. § 15, bars the Debtor as a debtor-in-possession from assuming its own contract under the hypothetical test set forth in the Third Circuit's opinion in *In re West Elecs., Inc.,* 852 F.2d 79 (3d Cir.1988).

In other words, under bankruptcy law the debtor-in-possession, as a post-petition entity, is an entirely different party than the pre-petition debtor which entered into the TAGOS contract with the Navy. The debtor-in-possession thereby becomes a hypothetical third party who cannot assume the contract which it entered into pre-petition because Section 365(c)(1)(A) would preclude that assumption without the Navy's consent. Of course, the Navy does not grant its consent.[3]

To accept the legal authority that espouses the hypothetical test to prevent a debtor from assuming its own contract is clearly not envisioned by the Bankruptcy Code and would be, at the least, a legal tautology.

If the Navy was correct in its position, every party entering into a lease or executory contract that subsequently files bankruptcy would be precluded from assuming its own contract under Section 365(c)(1)(A) because bankruptcy created a third party in the form of a debtor-in-possession as distinguished from the original contracting party. It must be recognized the Code's requirements of having the Debtor assume its own contract is unique in bankruptcy. Part of the uniqueness is the executory contract is property of the estate and is not relinquished because of some hypothetical scenario that makes the debtor-in-possession some other being than the original party to the contract. The clear reading of Section 365(c)(1)(A) in conjunction with any applicable law, including the Non–Assignment Act, is to prevent the Debtor from assigning the TAGOS contract to another third party shipwright without the Navy's

---

**2.** Section 365(c)(1)(A) states:

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor-in-possession whether or not such contract, or lease, prohibits or restricts assignment of rights or delegation of duties; ...

**3.** This Court does not believe it makes any difference whether or not the contract is a personal service contract or not as regards the interpretation of Section 365(c)(1)(A).

approval. This latter act is not the intent of the Debtor.

Further, a hypothetical test is not the intent of the statute. Circuit Judge Higginbotham, dissenting, in the *West Elecs.* case clearly saw that distinction:

> I do not believe that a "solvent contractor and an insolvent debtor in possession going through bankruptcy" ... are *different* entities for the purpose of the Non–Assignment clause. The interpretation of the *Adana* court [12 B.R. 977 (Bankr.N.D.Ga. 1980)—citation added] notwithstanding, I think that that provision really meant to avoid having the U.S. government contractually bound to a wholly separate entity that received an assignment from the actual contracting party. I do not believe that when it enacted Section 15 of Title 41, Congress considered the issue of whether a debtor in possession should be viewed as a party different than the debtor.

In fact, Congress may have understood the confusion that would have arisen if the majority decision in *West Elecs., Inc.* was allowed to prevail. Congress, in Section 365(c)(1)(A), clearly notes the Debtor-in-possession would not be allowed to assume or assign where applicable law would excuse the Navy "to such a contract or release from accepting performance from or rendering performance to an entity *other than* the debtor or *the debtor-in-possession* ..." *See, In re James Cable Partners, L.P.,* 148 B.R. 59 (Bankr.M.D.Ga.1992) aff'd 154 B.R. 813 (M.D.Ga.1993); *see also, United States v. Gerth,* 991 F.2d 1428, 1435 (8th Cir.1993).

Bankruptcy Judge Clark of the Western District of Texas articulated the predominant reason why the *West Elecs., Inc.* test should be rejected:

> Section 365(c)(1) is, by its nature, an interactive statute since it requires that we look at applicable nonbankruptcy law. By including the phrase "debtor in possession," Congress assures that all anti-assignment laws are given essentially the same effect in bankruptcy, i.e., preventing the estate from "running in a stranger" on the nondebtor party without its consent. By the same token, the additional reference to "an entity other than ... the debtor in posses-

sion" makes clear that the debtor in possession should not *itself* be barred from taking over the duties of the debtor under the contract because of a mere technical change in legal identity that makes the debtor in possession a "legal entity" other than the debtor.

> In this way, the statute also achieves a balancing of interests. On the one hand, legitimate anti-assignment laws which are designed to protect the nondebtor to the contract are preserved. On the other hand, legislatures are effectively barred from using the statute to pass laws designed to insulate their constituencies from ever having to do business with debtors in bankruptcy. In this way, the Bankruptcy Code achieves the balancing of interests so essential to the successful uniform application of bankruptcy laws nationwide to a wide variety of business enterprises.

*In re Hartec Enters., Inc.,* 117 B.R. 865, 873 (Bankr.W.D.Texas 1990).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED the U.S. Navy's motion for summary judgment as to the TAOS contract is granted and this Court does not have jurisdiction as to the remedies Debtor seeks to assert under the Contract Disputes Act. It is further

ORDERED, ADJUDGED AND DECREED the Debtor's motion for summary judgment as to the TAGOS contract is granted and Section 365(c)(1)(A) does not bar Debtor from assuming this contract, provided Debtor establishes its ability to meet the other requirements of Section 365. It is further

ORDERED, ADJUDGED AND DECREED that as to the TAGOS contract assumption, this Court, by separate order, will schedule a final evidentiary hearing. The other motions for summary judgment are denied.

DONE AND ORDERED.